IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **RONALD MOBLEY, individually and on behalf of similarly situated individuals**<br><br>Plaintiff<br><br>v.<br><br>**CIG Logistics LLC, and Continental Intermodal Group - Trucking LLC**<br><br>Defendants | CIVIL ACTION NO. _____<br><br><br><br>**CLASS ACTION COMPLAINT** |

**COLLECTIVE ACTION COMPLAINT**

Plaintiff Ronald Mobley ("Plaintiff" or "Mobley"), individually and on behalf of all others similarly situated, by and through his attorneys, bring this action against Defendants CIG Logistics LLC and Continental Intermodal Group - Trucking LLC, (collectively referred to as "Defendants") seeking unpaid wages, including overtime wages, and all other available relief under the New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-19, et seq. ("NMMWA"), North Dakota – N.D. Cent. Code Ann. § 34–14-02 et s–q. ("NDMW"); Arkansas – Ark. Code Ann. § 11–4–401 et seq. ("AMW"); and Oklahoma – Okla. Stat. Ann. tit. 40, § 165.2 et seq ("OMW").

Based on personal knowledge of his own conduct and upon information and belief as to the conduct and acts of others, Plaintiff alleges as follows:

**I.    PARTIES**

**Plaintiff**

1. Plaintiff is an adult resident of Louisiana. Plaintiff consents in writing to be a party to this collective action pursuant to 29 U.S.C. § 216(b). A Consent to Join form signed by

Plaintiff is attached hereto as Exhibit A.

2. At all relevant times, Defendants employed Plaintiff as an hourly non-exempt WSO.

3. Plaintiff and other similarly situated employees regularly worked more than 40 hours per workweek.

4. Plaintiff and other similarly situated employees are covered employees within the meaning of the FLSA.

**Defendant**

5. Defendant CIG Logistics LLC ("CIG") is a Delaware Company doing business in multiple states. Upon information and belief, its principal place of business is located at 209 West 2nd Street, #282, Fort Worth, Texas 76102. Defendant may be served through their registered agent, Capitol Corporate Services, Inc. at 206 E 9th Street, Suite 1300, Austin, Texas 78701. Defendant CIG was the company listed on Plaintiff's paystubs and 2020 W-2 Forms.

6. Defendant Continental Intermodal Group - Trucking LLC ("Continental") is an Oklahoma Limited Liability Company doing business in multiple states. Upon information and belief, its principal place of business is located at 420 Throckmorton Street, Ste. 550, Fort Worth, TX 76102 USA. Defendant can be served with process by serving its Texas registered agent, Capitol Corporate Services, Inc. at 206 E 9th Street, Suite 1300, Austin, Texas 78701. Defendant CIG Trucking was the company listed on Plaintiff's 2019 W-2 Forms.

7. At all relevant times, Defendants were an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d); an "enterprise" within the meaning of the FLSA, 29 U.S.C. § 203(r); and an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

8. At all relevant times, Plaintiff and similarly situated individuals were Defendants' "employees" within the meaning of the FLSA, 29 U.S.C. § 203(e).

9. Defendants apply the same employment policies, practices, and procedures to all WSOs.

## II. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over the claims in this complaint pursuant to 28 U.S.C. § 1332(d) because (1) this case involves over 150 New Mexico, Texas, Arkansas, Oklahoma, and North Dakota Class Members; (2) Plaintiff brings this action on behalf of himself and all other similarly situatedindividuals pursuant to 29 U.S.C. §216(b).

11. At all times material to this Complaint, Defendant had employees who have regularly sold, handled, or otherwise worked on goods and/or materials that had been moved in or produced for commerce.

12. Defendants' gross annual sales volume was in excess of $500,000.00 per annum at all times material hereto.

13. At all times material to this Complaint, Defendants were an enterprise engaged in interstate commerce or in the production of goods for commerce as defined by the FLSA, 29 U.S.C. § 203(s).

14. This case raises a federal question under 29 U.S.C. § 216(b), giving this Court original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

15. The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367, because the state law claims are so related to the federal question claims that they form part of the same case or controversy.

16. Plaintiff's state law claims are not novel or complex. 28 U.S.C. § 1367(c)(1).

17.     Plaintiff's state law claims do not predominate over their federal question claims. 28 U.S.C. § 1367(c)(2).

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(1) because Defendants conduct substantial business in this District, sending Plaintiff and Well Site Operators ("WSO") to perform work in this District while subjecting them to Defendants' improper and illegal payroll practices.

### III.     APPLICABLE STATE LAW

19.     The "New Mexico Wage Laws" refers to the New Mexico Minimum Wage Act ("NMMWA"), NMSA § 50-4-19, et seq.

20.     **Applicable North Dakota statute for Travel time**

**TRAVEL TIME N.D. Admin. Code § 46-02-07-02(7):**

"Ordinary travel from home to work need not be counted as work time. Special and unusual one-day assignments performed for the employer's benefit and at the employer's request is work time for the employee regardless of driver or passenger status. Travel away from home is work time when performed during the employee's regular working hours. Time spent traveling on nonworking days during regular working hours is work time. The time spent as a passenger on an airplane, train, bus, or automobile after normal working hours is not work time. The driver of a vehicle is working at anytime when required to travel by the employer. Travel time from jobsite to jobsite, or from office to jobsite, is work time to be compensated. Activities which are merely incidental use of an employer-provided vehicle for commuting home to work are not considered part of the employee's principal activity and therefore need not be counted as work time."

21.     **Applicable North Dakota statute for Overtime**

**OVERTIME N.D. Admin. Code § 46-02-07-02(4):**

"Overtime pay must be paid at one and one-half times the regular rate of pay to any employee for hours worked in excess of forty hours in any one week. Paid holidays, paid time off, or sick leave are not counted in computing overtime hours. Overtime is computed on a weekly basis regardless of the length of the pay period. Hours worked may not be averaged over the pay period or used to offset shorter weeks. Employees working more than one job under the control of the same employer must have all hours worked counted toward overtime. Individuals employed as drivers

by taxicab companies must be compensated at one and one-half times the regular rate of pay for all hours worked in excess of fifty hours in any one week. Hospitals and residential care establishments may adopt, by agreement with their employees, a fourteen-day overtime period in lieu of the usual seven-day workweek, if the employees are paid at least time and one-half their regular rate for hours worked over eight in a day or eighty in a fourteen-day work period. The following types of employment are exempt from the overtime provisions of this subsection:"

22. **Applicable Oklahoma State Laws**

   **Okla. Admin. Code § 380:30-1-8:**

   "**(a)** Regular wages are those payments that an employee receives for services rendered in the regular course and scope of employment. They must be paid either semi-monthly or monthly, according to 40 O.S. § 165.2. Payment must be made for all time worked, and may not be conditioned on job performance.**(b)** Payment of premium overtime due to requirements of the Fair Labor Standards Act, 29 U.S.C. § 201*et seq.*, is a matter of Federal law. The Department adopts the regulations of the U.S. Department of Labor as published in the Code of Federal Regulations, and the Interpretive Bulletins relating thereto, in determining compliance issues on such claims.**(c)** Payment of overtime premiums pursuant to the terms of an employment agreement is considered part of regular wages for purposes of these rules."

   **Okla. Admin. Code § 380:30-1-7:**

   "**(a)** No employer shall require or permit an employee, as a condition of securing or retaining employment, to work without monetary compensation."

23. **Applicable Arkansas Statute on overtime for travel time:**

   **235-08-20 Ark. Code R. § 1**

   "**4.** Travel that is all in the day's work.
   Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice. If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time. However, if the employee goes home instead of returning to his employer's premises, the travel after 8 p.m. is home-to-work travel and is not hours worked."

   "**5.** Travel away from home community.

Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days. Thus, if an employee regularly works from 9 a.m. to 5 p.m. from Monday through Friday the travel time during these hours is worktime on Saturday and Sunday as well as on the other days. Regular meal period time is not counted. As an enforcement policy the <u>division</u> will not consider as worktime that time spent in travel away from home outside of regular working hours as a passenger on an airplane, train, boat, bus, or automobile."

"**6.** When private automobile is used in travel away from home community.
If an employee is offered public transportation but requests permission to drive his car instead, the employer may count as hours worked either the time spent driving the car or the time he would have had to count as hours worked during working hours if the employee had used the public conveyance."

"**7.** Work performed while traveling.
Any work which an employee is required to perform while traveling must, of course, be counted as hours worked. An employee who drives a truck, bus, automobile, boat or airplane, or an employee who is required to ride therein as an assistant or helper, is working while riding, except during bona fide meal periods or when he is permitted to sleep in adequate facilities furnished by the employer."

24. **Applicable Arkansas Statute on overtime for Overtime:**

   **010.14-109 Overtime Compensation**

   "**A.** For the purposes of determining and calculating overtime pay requirements and what constitutes an employee's "regular rate" of pay, the agency adopts and incorporates herein the provisions of 29 C.F.R. 778 as applicable."

IV. **FIRST CAUSE OF ACTION: VIOLATION OF STATE WAGE PAYMENT LAWS**
*On Behalf of Plaintiff and the State Wage Payment Laws Class*

24.  Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

25.  At all times relevant to this action, Plaintiff and class members were employed by Defendants.

26.  Defendants' course of conduct described above violated wage payment laws of

the states listed herein by failing to pay all wages due or owed to Plaintiff and other similarly situated employees for which the company had agreed to pay. Defendants failure to pay all wages due and owing to its employees is in violation of the following state wage payment laws, each of whose relevant terms are materially equivalent such that a common violation may be established on a class-wide basis:

    a. Arkansas – Ark. Code Ann. § 11–4–401 *et seq.*;

    b. New Mexico – N.M. Stat. Ann. § 50–4–26 *et seq.*;

    c. North Dakota – N.D. Cent. Code Ann. § 34–14-02 *et s–q.*;

    d. Oklahoma – Okla. Stat. Ann. tit. 40, § 165.2 *et seq.*;

27. Defendants maintain a company–wide policy and practice of failing and refusing to pay wages due and owing to Plaintiff and other similarly situated employees and said policy is willful in nature and not the result of a good-faith mistake.

### V.  SECOND CAUSE OF ACTION: VIOLATION OF STATE OVERTIME STATUTES
*On Behalf of Plaintiff and the State Unpaid Overtime Class*

28. Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

29. At all times relevant to this action, Plaintiff and other similarly situated employees (collectively "Plaintiffs" for purposes of this count) were employed by Defendants.

30. Defendants' course of conduct described herein violated the various overtime statutes of the several states listed in the subsequent paragraph by improperly excluding from its employees' regular rate certain forms of compensation, including stipends and allowances, thereby resulting in unpaid overtime owed to Plaintiffs.

31. Defendants failure to pay overtime to its employees is in violation of the

following state overtime laws, each of whose relevant terms are materially equivalent such that a common violation may be established on a class-wide basis:

    a. New Mexico – N.M. Stat. Ann. § 50–4–22 *et seq.*;

    b. North Dakota – N.D. Admin. Code 46–02–07–02(4) *et seq.*;

    c. Oklahoma – Okla. Stat. Ann. tit. 74, § 840–2.15 *et seq.*;

32. Defendants maintain a uniform, company-wide policy and practice of miscalculating the overtime rate of Plaintiff, and said policy is willful in nature and not the result of a good faith mistake.

## VI. THIRD CAUSE OF ACTION: UNPAID OVERTIME UNDER THE FLSA
*On Behalf of Plaintiff and the Nationwide FLSA Collective*

33. Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

34. At all times relevant to this action, Plaintiff and other similarly situated employees (collectively "Plaintiffs" for purposes of this count) were employed by Defendants.

35. Defendants violated the FLSA by failing to pay Plaintiffs for all overtime hours worked at one and one-half times the regular rate for all hours worked in excess of forty hours in a workweek.

36. Specifically, the FLSA requires that employees are paid one and one-half times their "regular rate" of pay. The "regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

37. Defendants knew that it was required to pay Plaintiff and the WSO for all hours worked, including hours spent traveling away from their home communities to job sites.

38. Defendants improperly reduced its employees' regular rate when calculating overtime by wrongfully excluding certain forms of compensation, including stipends and allowances.

39. In so doing, Defendants failed to properly compensate Plaintiffs for overtime worked pursuant to the FLSA.

40. Defendants is not eligible for any FLSA exemption excusing their failure to pay overtime.

41. Plaintiffs are victims of a uniform, company-wide compensation policy.

42. Plaintiffs are entitled to damages equal to the mandated overtime premium pay within the three years preceding their joining this action, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard of whether its conduct was prohibited by the FLSA.

43. Defendants have acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay pursuant to 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants did act with good faith and reasonable grounds in failing to pay overtime pay, Plaintiffs are entitled to an award of prejudgment interest at the applicable legal rate.

## VII. FACTUAL ALLEGATIONS

44. Defendant CIG provided fracking sand and onsite sand service to fracking companies in multiple states. Defendants employed Plaintiff and other WSO to work for them in the States of Texas, New Mexico, Oklahoma, Arkansas, and North Dakota.

45. At all relevant times, Defendants employed Plaintiff and similarly situated

individuals as non-exempt WSO.

46. WSO performed the manual tasks associated with Defendants' onsite sand services.

47. Based on reasonable belief, CIG and Continental acted as joint employers or one single enterprise.

48. CIG would schedule Plaintiff and the WSO to work out of town in two-week-long assignments called a "Hitch".

49. The average duration of each hitch is 14 days.

50. WSO can work a double hitch which is about 5 weeks long.

51. At the end of the hitch, Plaintiff and the WSO would spend one (1) travel day to drive back to their hometown. They would then get five (5) days off. On the seventh (7) day, Plaintiff and the WSO would spend that day driving to the next out-of-town assignment.

52. Defendant paid Plaintiff and the WSO on an hourly basis.

53. WSOs were required to report to job sites to perform Defendants' sand operations services to fracking companies in various states. These job sites were frequently located hundreds of miles away from WSO's home communities.

54. WSOs typically work at least forty (40) hours per workweek. WSOs typically worked multiple-day shifts away from their home communities. Because the worksites were away from their home communities, WSOs typically stayed overnight in man camps during the scheduled work shifts.

55. WSOs spent most of the day before and after their shifts driving hundreds of miles to and from the job sites. This travel cut across WSO's normal working hours during both regular working days and non-working days.

56. The identity of all WSOs is unknown at this time but is known to Defendant and is contained in Defendant's records.

57. Defendant did not count time spent traveling as hours worked for purposes of determining overtime eligibility. Consequently, Defendant failed to pay proper wages, including overtime wages to Plaintiff and other similarly situated individuals.

58. At all material times, Defendant willfully deprived WSO of proper wages, including overtime wages.

59. Defendant knew that WSO were working overtime hours and hours for which they were not compensated at an overtime rate when they traveled to job sites.

60. The exact amount of compensation, including overtime compensation that Defendants has failed to pay Plaintiff and other similarly situated individuals are unknown at this time.

61. The FLSA requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment, and to preserve such records.

62. Defendants did not make, keep or preserve accurate records of the hours worked by Plaintiff and similarly situated individuals.

63. Defendants unlawful conduct has been widespread, repeated, and consistent.

64. Defendants conduct was willful and in bad faith and has caused significant damages to Plaintiff and similarly situated individuals.

65. Plaintiff worked for Defendants in Texas, New Mexico, Oklahoma, Arkansas, and North Dakota.

### VIII.   CLASS ACTION ALLEGATIONS

66. <u>Class Definitions</u>: Plaintiff brings this action individually and on behalf of other

similarly situated individuals. Pursuant to Federal Rules of Civil Procedure 23(b)(3), 23(b)(2), and/or 23(c)(4), Plaintiff seeks certification of the foregoing classes and subclasses, defined as follows:

> The Class: All persons who entered into an Assignment Confirmation Notice agreement with Defendants and whose total compensation was reduced before the end of the agreed upon term.
>
> State Wage Payment Laws Class: All persons who entered into an Assignment Confirmation Notice agreement with Defendants to work at a facility or location in Arkansas, New Mexico, North Dakota, Oklahoma, and whose total compensation was reduced before the end of the agreed upon term.

67. Excluded from the Class are the Court and its officers, employees, and relatives; Defendants and its subsidiaries, officers, and directors; and governmental entities.

68. Numerosity: the Class consists of members so numerous and geographically dispersed that joinder of all members is impracticable, as Defendants employ thousands of similarly situated individuals across the United States.

69. All members of the Class are ascertainable by reference to objective criteria, as Defendants have access to addresses and other contact information for Class members that can be used for notice purposes.

70. Common Questions of Law and Fact Predominate: There are many questions of law and fact common to Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual members of the Class. Common questions include:

    a. Did Defendants act in bad faith?
    b. Did Defendants engage in fraudulent concealment?
    c. Did Defendants conduct violate state wage payment statutes?

71. Typicality: Plaintiff's claims are typical of other members of the Class because all of the claims arise from the same course of conduct by Defendants, failure to pay for drive time, and

12

are based on the same legal theories.

72. <u>Adequacy of Representation</u>: Plaintiff is an adequate class representative because his interests do not conflict with the interests of the Class members whom he seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of Class members and have the financial resources to do so. The Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

73. <u>Superiority of Class Action</u>: Class treatment is superior to individual treatment, as it will permit a large number of similarly situated persons to prosecute their respective class claims in a single forum, simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

74. To the extent not all issues or claims, including the amount of damages, can be resolved on a class-wide basis, Plaintiff invokes Federal Rule of Civil Procedure 23(c)(4), reserving the right to seek certification of a class action with respect to particular issues, and Federal Rule of Civil Procedure 23(c)(5), reserving the right to divide the class into subclasses.

## IX.   COLLECTIVE ACTION ALLEGATIONS

75. Plaintiff, on behalf of himself and other similarly situated individuals, re-alleges and incorporate by reference the above paragraphs as if fully set forth herein.

76. Plaintiff brings this action on behalf of himself and all other similarly situated individuals pursuant to the FLSA, 29 U.S.C. § 216(b). The proposed collective is defined as follows:

> All WSO who Defendants employed or employs as non-exempt hourly employees who have not been paid at an overtime rate for time spent traveling to job sites in which an overnight stay is required when such travel resulted in a workweek in excess of 40 hours at any time during the three years preceding

the filing of this action.

77. The illegal pay practices Defendants imposed on Mr. Mobley were likewise imposed on the WSO.

78. Numerous other individuals who worked with Mr. Mobley were required to drive to their out-of-town hitch during their regular business hours and were not properly compensated for all hours worked as required by the FLSA. Upon information and belief, the WSO are so numerous as to make their joinder in this action impracticable.

79. Thus, the Defendants imposed a uniform practice or policy on Mr. Mobley and the WSO regardless of any individualized factors.  They all worked over 40 hours a week.  Any unpaid business travel to and from their hitch would result in unpaid overtime.

80. Based on his experiences and tenure with Defendants, Mr. Mobley is aware that Defendants' illegal practices were imposed on the WSO.

81. WSOs were not paid overtime premiums for any hours traveling to and from their home communities and their out-of-town hitches.

82. Defendants' failure to pay wages and overtime compensation at the rates required by the FLSA results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the WSO.

83. Everyone had to travel for business by leaving their home communities to their out-of-town man camps at the beginning of each hitch. They would return to their home communities at the end of each hitch.

84. Mr. Mobley's experiences are therefore typical of the experiences of the WSO.

85. The specific job titles or precise job locations of the various WSOs do not prevent class or collective treatment.

86. Mr. Mobley has no interest contrary to, or in conflict with, the other WSO. Like each member of the proposed classes, Mr. Mobley has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

87. Plaintiff is similarly situated to the WSO and will prosecute this action vigorously on their behalf.

88. During the relevant time period, Plaintiff and the WSO routinely spent time traveling away from home to Defendants' job sites. Plaintiff and the WSO were not compensated for their travel time at an overtime rate, even when such travel resulted in a workweek in excess of 40 hours.

89. Defendants willfully engaged in a pattern of violating the FLSA, 29 U.S.C. § 201 *et seq.*, as described in this Complaint in ways including, but not limited to, failing to pay Plaintiff and the WSO proper compensation, including overtime compensation, for their travel time.

90. Defendants conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

91. Plaintiff Ronald Mobley, individually and on behalf of all others similarly situated, seeks relief on a collective basis challenging Defendants' above-described FLSA violations. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Defendants' records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

## X.   REQUEST FOR RELIEF

Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in their favor and against Defendants as follows:

A. That the Court certify this action as a class action, proper and maintainable

pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative, and appoint Plaintiff's counsel as Class Counsel;

  B. That the Court award Plaintiff and the Class or Subclass(es) compensatory, consequential, general, nominal, and statutory (along with any other damages available at law) to the extent permitted by law and in an amount to be determined at trial;

  C. That the Court issue notice to all similarly situated employees of Defendants informing them of their right to file consents to join the FLSA portion of this action;

  D. That the Court award Plaintiff and all similarly situated employees damages for unpaid overtime wages under 29 U.S.C. § 216(b);

  E. That the Court award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

  F. That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses as provided by law;

  G. That the Court award pre-and post-judgment interest at the maximum legal rate; and

  H. That the Court grant all such other relief as it deems just and proper.

Respectfully submitted,

TRAN LAW FIRM

*/s/ Trang Q. Tran*
Trang Q. Tran
Federal ID No. 20361
Texas Bar No. 00795787
2537 South Gessner Road, Suite 104
Houston, Texas 77063
Tel: (713) 223 – 8855
trang@tranlf.com
service@tranlf.com

        David Glenn
        Texas Bar No. 08028350
        1017 William D Tate Ave, Ste 100
        Grapevine, TX 76051-4092
        (817) 424-5999 Office
        (817) 481-3240 Fax
        Davidglenn@glennlawfirm.com